IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONALD C. E.,[1]    )
                    )
    Plaintiff,      )
                    )
vs.                 )   Civil No. 17-cv-885-CJP[2]
                    )
COMMISSIONER OF SOCIAL )
SECURITY,           )
                    )
    Defendant.      )

## **MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for benefits in July 2013, alleging disability beginning on November 20, 2011. After holding an evidentiary hearing, ALJ Robert S. Robison denied the application on October 17, 2016. (Tr. 23-32). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 21.

## Issue Raised by Plaintiff

Plaintiff raises the following issue:

>	1.	The ALJ erred in failing to resolve conflicts between the vocational expert's testimony and information contained in the *Dictionary of Occupational Titles.*

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v.*

*Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber

4

stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Robison followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. He was insured for DIB only through December 31, 2012.[4] The ALJ found that plaintiff had severe impairments of seizure disorder, panic disorder without agoraphobia, adjustment disorder with anxious mood, and obesity. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level, limited to no climbing of ladders, ropes or scaffolds; no operation of motor vehicles or material handling equipment; no work in confined spaces; and no exposure to hazards such as unprotected heights or dangerous machinery. He was able to understand, remember, and carry out simple, routine tasks; to use judgment in making commensurate work-related decisions; and to interact appropriately with the general public, coworkers, and supervisors. He required a reduced stress work environment, defined as "having to make occasional commensurate work decisions and no more than occasional changes in routine in a normal work setting."

The ALJ found that plaintiff had no past relevant work.[5] Based on the

---

[4] The date last insured is relevant only to the claim for DIB.
[5] That finding was contrary to the ALJ's statement at the hearing.

testimony of a vocational expert, the ALJ found that plaintiff was not disabled because he was able to do jobs that exist in significant numbers in the economy.

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of plaintiff's arguments, the Court will omit a discussion of the medical evidence.

Two hearings were held. Plaintiff was represented by an attorney at both. (Tr. 40, 75).

At the first hearing, plaintiff testified regarding his seizure disorder and anxiety symptoms. The hearing was adjourned with the understanding that plaintiff had more medical treatment scheduled in the near future and would submit additional medical records. (Tr. 77-106).

A vocational expert (VE) testified at the second hearing. The ALJ indicated that plaintiff had past relevant work as a material handler and a forklift operator. The VE testified that material handler is classified at the heavy exertional level, and that forklift operator is classified as medium exertion, although plaintiff had performed it at the heavy level. The ALJ asked her a hypothetical question that corresponded to the RFC assessment. The VE testified that this person could not do plaintiff's past work. She identified three other jobs that could be done by a person with plaintiff's RFC: price marker (DOT 209.587-034), routing clerk (DOT 222.587-038), and cafeteria attendant (DOT 311.677-010). (Tr. 58-62).

Plaintiff's counsel asked questions about permissible incidences of off task behavior and absenteeism. (Tr. 63).

The ALJ then enquired about conflicts with the DOT:

Q. Okay. Ms. Smith, ma'am, has your testimony been consistent with the information contained in the <u>Dictionary of Occupational Titles</u> and <u>Selected Characteristics of Occupations</u>?

A. It has been, Your Honor. And I will add for the record that I have relied upon my professional opinion regarding confined spaces as well as off task behavior and absenteeism.

Q. Okay.

A. The DOT doesn't address those issues.

Q. All right. And that's based on your education, experience, job studies, and the like?

A. Absolutely, Your Honor.

(Tr. 64).

## **Analysis**

As was noted above, at step five of the sequential analysis, if the claimant is not able to perform his past work, the Commissioner bears the burden of showing that he is capable of performing other jobs that exists in significant numbers in the economy.

In making the step five determination, the ALJ generally relies on the DOT for information about the typical characteristics of jobs as they exist in the economy.[6] An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. See, 20 C.F.R. § 404.1566(d)(1). The ALJ often also relies on testimony from a VE

---

[6] The Seventh Circuit has pointed out the inadequacies of the DOT as a source of information. "A further problem is that the job descriptions used by the Social Security Administration come from a 23–year–old edition of the Dictionary of Occupational Titles, which is no longer published, and mainly moreover from information from 1977–37 years ago. No doubt many of the jobs have changed and some have disappeared. We have no idea how vocational experts and administrative law judges deal with this problem." *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014).

to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011).

When a VE testifies, the ALJ is required to ask the VE whether there are any conflicts between her testimony and the information in the DOT:

> Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR-004p, 2000 WL 1898704, at *2.

The Seventh Circuit agrees that, pursuant to SSR-004p, an ALJ has an affirmative duty to ask the VE whether her testimony conflicts with information contained in the DOT. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006).

For each job title, the DOT specifies whether certain physical and mental activities are required, and, if so, the frequency with which they are required. The DOT does not, however, speak to every possible aspect of the job title. As the VE pointed out, it does not address working in confined spaces or permissible incidences of being off task or absent. Plaintiff argues that the DOT does not address other factors that were included in the hypothetical question, i.e., operation of motor vehicles and material handling equipment; memory of tasks; the extent to which tasks are routine; use of judgment; interaction with the public,

8

coworkers and supervisors; stress level; and frequency of decision-making and of changes in routine. Plaintiff argues that there is a conflict between the VE's testimony and information contained in the DOT where, as here, the VE testified about subjects not addressed in the DOT.

At the hearing, plaintiff's counsel did not point out any conflict between the VE's testimony and the DOT. Therefore, plaintiff "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008), citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)[emphasis in original].

The Commissioner does not dispute that the VE testified about subjects that are not addressed by the DOT. Rather, citing *Zblewski v. Astrue*, 302 F. App'x 488 (7th Cir. 2008) and district court cases from this Circuit, defendant argues that there is no conflict where the VE testifies about information that is not contained in the DOT.

In *Zblewski*, the ALJ asked the VE a hypothetical question that included a limitation to a sit/stand option. The ALJ there did not ask the VE whether his testimony conflicted with the DOT. Plaintiff argued that the ALJ erred because he failed to resolve the inconsistency between the VE's testimony and the DOT, based on the absence of a definition in the DOT of a sit/stand option. Noting that the ALJ has a duty to enquire into and resolve *apparent* conflicts, the Seventh Circuit disagreed, holding that "Because the DOT does not address the subject of sit/stand

options, it is not apparent that the testimony conflicts with the DOT." *Zblewski*, 302 F. App'x at 494.

Defendant reads *Zblewski* to mean that there is no conflict between the VE's testimony and information supplied in the DOT if the DOT is silent on the subject of the VE's testimony. See, Doc. 18, p. 5. In the Court's view, this is too broad a reading. Because the conflict had not been identified at the hearing in *Zblewski*, the issue before the Court was whether the conflict was apparent such that, under *Overman, supra*, the ALJ had a duty to enquire into the conflict. In that context, the Seventh Circuit's holding, quoted above, is more properly read as meaning that the conflict was not apparent, and not, as defendant would read it, that there was no conflict. And, of course, *Zblewski* is a nonprecedential case.

Moreover, this Court's reading of *Zblewski* is in line with SSR 00-4p. In the section of the SSR entitled "Reasonable Explanations for Conflicts (or Apparent Conflicts) in Occupational Information," the agency gives two examples of "reasonable explanations for such conflicts." The first example involves evidence from a VE which includes "information not listed in the DOT." The second example is "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR-004p, 2000 WL 1898704, at *2-3. Thus, it would appear that the agency's own interpretation is that there is a conflict between the VE's testimony and the DOT where the VE testifies about information that is not contained in the

DOT.

Defendant argues that SSR 00-4p means that the non-DOT information supplied by the VE is an explanation for a conflict, and not a source of a conflict. Doc. 18, p. 5. The Court disagrees.

In pertinent part, SSR 00-4p states:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.
> . . . .
>
> Reasonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE or VS, rather than the DOT information, include, but are not limited to the following:
>
> Evidence from VEs or VSs can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.
>
> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

2000 WL 1898704, at *2.

In the Court's view, the above passage is most reasonably read to mean that a conflict (or inconsistency) exists where the VE testifies to information that is not listed in the DOT. The "reasonable explanation" for that conflict is information that "may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling."

Plaintiff's position is also supported by *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). There, the ALJ failed to ask whether the VE's testimony conflicted with the DOT. One of the limitations in issue was a reaching limitation. The Seventh Circuit held that the ALJ has an affirmative duty to enquire about conflicts with the DOT. The Court noted, "It is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help." *Prochaska*, 454 F.3d at 736. This language strongly suggests that a VE's testimony on a topic not covered in the DOT is testimony that conflicts with the DOT.

This Court finds that the VE's testimony conflicted with the DOT with regard to the aspects of the hypothetical question that are not addressed in the DOT: working in confined spaces; operation of motor vehicles and material handling equipment; memory of tasks; the extent to which tasks are routine; use of judgment; interaction with the public; coworkers and supervisors; stress level; and frequency of decision-making and of changes in routine. Of course, plaintiff's counsel did not object or raise the conflict at the hearing, and plaintiff therefore

cannot raise it here unless the conflict was obvious enough that the ALJ should have recognized it without any prompting from plaintiff. *Overman,* 546 F.3d at 463. An ALJ who routinely handles social security disability hearings presumably has a working knowledge of DOT job descriptions; he should know that those descriptions do not cover the areas noted by plaintiff. Accordingly, when a VE testifies that a particular job can be performed by a person who is limited in those areas, it should be obvious to the ALJ that the VE's testimony conflicts with the DOT.[7]

There is an additional factor here in that the VE affirmatively (but no doubt unintentionally) misled the ALJ. She said that she had testified about areas not addressed by the DOT: "confined spaces as well as off task behavior and absenteeism." That testimony was incorrect in that it failed to acknowledge that the hypothetical question included a numbers of other areas not addressed by the DOT.

Defendant argues that "Plaintiff, in effect, seeks to impose on the ALJ the costly burden of conducting a largely irrelevant inquiry in countless hearings." Doc. 18, p. 6. She fails to explain why it would be so costly and such a burden to require the ALJ to determine the basis for the VE's testimony. And, it is far from being an irrelevant inquiry. It is not a meaningless formality to require the ALJ to ask the VE about conflicts with the DOT and to resolve them. If the testimony conflicts with the DOT or is about a subject not included in the DOT, the basis of the

---

[7] Of course, the conflict with the DOT should also be apparent to an attorney experienced in social security disability law. Raising the issue at the hearing is obviously the better practice.

VE's testimony obviously cannot be the DOT.  The testimony of a VE can constitute substantial evidence to support the ALJ's step five finding, but only if that testimony is reliable.  *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004).  Again, the Commissioner bears the burden of proof at step five.  Although the Federal Rules of Evidence do not apply in administrative proceedings, expert witnesses still must use "reliable methods" to arrive at their conclusions.  *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002).  There is no way to assess the reliability of the VE's testimony where she testifies about a subject not included in the DOT and gives no other basis for her testimony.

Further, the VE did identify an area included in the hypothetical question but not addressed in the DOT, working in confined spaces.  The ALJ suggested that her testimony regarding same was based on her "education, experience, job studies, and the like."  The VE agreed that was the basis for her testimony, but that was an insufficient basis.  See, *Hill v. Colvin*, 807 F.3d 862, 869, n. 10 (7th Cir. 2015), and cases cited therein.

The Commissioner argues that any error was harmless because it is "overwhelmingly likely that further VE testimony would merely confirm that someone of Plaintiff's functioning could do" the job of price marker.  Doc. 18, p. 7.  The DOT describes that job as:

> Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types     of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies.

> May print information on tickets, using ticket-printing machine [TICKETER (any industry); TICKET PRINTER AND TAGGER (garment)].

DOT 209.587-034, 1991 WL 671802.

The Commissioner says it is "obvious" that a price marker would not have to work in confined spaces, but the DOT description says nothing about where a price marker works. It is entirely plausible that price marking is done in confined spaces in warehouses or storage areas. Further, the description says nothing about the frequency of work decisions required or the frequency of changes in the work setting. In any event, the Commissioner's argument is an invitation to the Court to serve as a vocational expert, which the Court is not qualified to do.

Because the ALJ's decision was not supported by substantial evidence, this case must be remanded. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2010).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant time or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42

U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   June 26, 2018.**


**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**U.S. MAGISTRATE JUDGE**